UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                  'O'
AMENDED

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| CONNIE LEE | Alexander Joko | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Dominic Nesbitt Gary Osborne | Mark Gamboa |

**Proceedings:** PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING AMERICAN CASUALTY'S DUTY TO DEFEND (Dkt. 12, filed on November 18, 2015)

## I.    INTRODUCTION

On September 11, 2015, plaintiffs KM Strategic Management, LLC ("KM") and Hemet Community Medical Group, Inc. ("HCMG") (collectively, "plaintiffs") filed the instant action against defendant American Casualty Company of Reading, PA ("American Casualty"). See Dkt. 1 (Complaint). Plaintiffs' complaint asserts five claims stemming from defendant's denial of its duty to defend plaintiffs in two separate lawsuits. Specifically, in relation to defendant's denial of a defense in the first lawsuit, plaintiffs assert claim one for breach of contract (defense costs) and claim two for tortious breach of the implied covenant of good faith and fair dealing; in relation to defendant's denial of a defense in the second lawsuit, plaintiffs assert claim three for breach of contract (defense costs), claim four for breach of contract (settlement costs), and claim five for tortious breach of the implied covenant of good faith and fair dealing. Id. ¶¶ 22-43.

On November 18, 2015, plaintiffs filed the instant motion for partial summary judgment regarding American Casualty's duty to defend. Dkt. 13 ("Motion"). Through their motion, plaintiffs seek an order (1) granting partial summary judgment on their first claim for relief, breach of contract (as to defense costs in the first lawsuit), and their third claim for relief, breach of contract (as to defense costs in the second lawsuit). On November 30, 2015, American Casualty filed an opposition to the instant motion. Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**　　　**'O'**
**AMENDED**

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

14 ("Opp'n"). Plaintiffs filed a reply to defendant's opposition on December 7, 2015. Dkt. 15 ("Reply"). The Court held oral argument on December 21, 2015. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.　BACKGROUND

Plaintiff HCMG avers that it is an Independent Physician Association ("IPA") that maintains relationships with numerous Health Maintenance Organizations ("HMOs"). Dkt. 12-2, Plaintiffs' Statement of Undisputed Facts ("PS") ¶ 1. HCMG states that it contracts with professional corporations comprised of primary care physicians in order to provide medical services to HMO enrollees. Id. ¶ 2. These professional corporations are sometimes called "Sub-IPAs" because they do not themselves have direct relationships with HMOs and need to access HMO patients through an IPA such as HCMG. Id. ¶ 3. To oversee their operations, IPAs and Sub-IPAs may employ the services of professional management companies like plaintiff KM, which is the management organization in the HCMG network. Id. ¶ 4.

### A.　The American Casualty Insurance Policies

Defendant American Casualty issued two consecutive liability insurance policies to plaintiff KM (collectively, "the policies"), both under policy number B 2026696651. PS ¶¶ 5-6; Dkt. 14-5, Defendant's Response to Plaintiffs' Separate Statement of Undisputed Facts ("DS") ¶¶ 5-6. The first policy was in effect from October 30, 2010 through October 30, 2011 ("Policy #1"), and the second policy was in effect from October 30, 2011 to October 30, 2012 ("Policy #2"). PS ¶¶ 5-6; DS ¶¶ 5-6.. Both policies identified KM as the "Named Insured" and HCMG as an "Additional Named Insured." PS ¶¶ 7-8; DS ¶¶ 7-8. The policies also extended coverage to the members, managers and employees of KM, which is a limited liability company, and to the executive officers, directors, and employees of HCMG, which is a corporation. Dkt. 12-6 (Policy #1), at pp. 36-37; Dkt. 12-7 (Policy # 2) at p. 97.

The policies cover "Personal and Advertising Injury Liability" under the terms outlined below. As is relevant to the instant motion, the insuring language in the policies reads as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL              'O'
### AMENDED

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|----------|----------------------|------|-------------------|
| Title    | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

A.    Coverages

    1.    Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury)

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "*personal and advertising injury*" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "personal and advertising injury," to which this insurance does not apply.  We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

                * * *

        b.    This insurance applies:

                * * *

        (2) To "personal and advertising injury" caused *by an offense arising out of your business*, but only if the offense was committed in the "coverage territory" during the policy period.

Dkt. 12-6 (Policy #1), at p. 28 (emphasis added); Dkt. 12-7 (Policy # 2) at p. 88 (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      **'O'**
**AMENDED**

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|----------|----------------------|------|-------------------|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

The policies define "personal and advertising injury," in relevant part, to include injury arising out of:

> Oral or written publication, in any manner, *of material that slanders or libels a person or organization* or disparages a person's or organization's goods, products or services[.]

Dkt. 12-6 (Policy #1), at p. 41; Dkt. 12-7 (Policy # 2) at p. 102.

In addition, the policies contain the following exclusions, which provide that the policies do not apply to:

> "Personal and advertising injury"

> (1) Caused by or at the direction of the insured with the *knowledge that the act would violate the rights* of another and would inflict "personal and advertising injury" [the "knowing violation" exclusion];

> (2) Arising out of oral or written publication of material, if done by or at the direction of the insured *with knowledge of its falsity* [the "knowledge of falsity" exclusion];

> (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

> (4) Arising out of a *criminal act* committed by or at the direction of any insured [the "criminal act" exclusion];

\*\*\*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| **AMENDED** | | | |
| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

(6)   Arising out of *breach of a contract*, except an
implied contract to use another's advertising idea
in your "advertisement" [the "breach of contract"
exclusion];

Dkt. 12-6 (Policy #1), at p. 34; Dkt. 12-7 (Policy # 2) at p. 94.

## B.   The Underlying Litigation

### 1.   The Prime Partners Complaint

On October 31, 2011, a lawsuit was filed in the Riverside County Superior Court
in a matter entitled Prime Partners IPA of Temecula, Inc., et al. v. Kali P. Chaudhuri, et
al. Dkt. 12-8 (the "Prime Partners Complaint"), Caption Page.  The plaintiffs were Prime
Partners IPA of Temecula, Inc. ("Prime Partners") and Meadowview IPA Medical Group,
Inc. ("Meadowview"), both of which, according to plaintiffs in the instant action, were
sub-IPAs in the HCMG network.  Id.; PS ¶ 13.

The Prime Partners Complaint named as defendants both KM and HCMG, as well
as Kali P. Chaudhuri, Michael Foutz, and William E. Thomas.  See Prime Partners
Complaint, Caption Page.  The complaint alleged that Dr. Chaudhuri and Mr. Foutz were
at all relevant times "officers, directors and/or controlling managers of HCMG and KM."
Id. ¶ 14.  The Prime Partners Complaint further alleged that "each Defendant was the
agent . . . of each of the other Defendants," and that "[e]ach Defendant ratified,
authorized, assisted and/or consented to the wrongful acts of each of the Defendants."  Id.
¶ 9.  In addition, the Prime Partners Complaint alleged that "the allegations . . . against
HCMG and/or KM are necessarily also pled against Chaudhuri and/or Foutz, and visa
versa [*sic*]," and that "the allegations . . . against HCMG are necessarily also pled against
KM, and visa versa [*sic*]."  Id. ¶ 18.

Broadly speaking, the Prime Partners Complaint included allegations of years-long
mismanagement in relation to HCMG's and KM's business dealings with Prime Partners
and Meadowview.  Id. ¶¶ 34-35, 73-75.  A particular paragraph in the Prime Partners
Complaint also contained allegations concerning the publication of false statements to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL    'O'<br>AMENDED | | |
|---|---|---|---|
| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

third parties that allegedly caused injury to Prime Partners' business.  Specifically, the Prime Partners Complaint alleged as follows:

> HCMG and KM have seized on their financial manipulation of Prime Partners by *publishing to the provider community* that *Prime Partners is in financial distress*, while at the same time using this *falsity* as a tool to recruit Prime Partners' physicians to contract directly with HCMG.

Id. ¶ 61 (emphasis added).

Another such allegation concerned HCMG's efforts to stop Prime Partners from entering into a business relationship with a replacement IPA.  Specifically, The Prime Partners Complaint alleged that when HCMG discovered Prime Partners was seeking to discontinue its business relationship with HCMG and KM, and was in negotiations with prospective new IPAs, HCMG's attorneys sent threatening cease and desist letters to the prospective IPAs.  See Id. ¶¶ 42-44, 47-49, 51.  These cease and desist letters demanded that the prospective IPAs cease their negotiations with Prime Partners on the grounds that Prime Partners was already bound to HCMG by a Provider Services Agreement.  Id. ¶ 48-49, 51.  The Prime Partners Complaint alleged that the Provider Services Agreement referenced in the cease and desist letters was in fact a forgery that was being used "to prevent Prime Partners from contracting with another IPA . . . ."  Id. ¶¶ 46, 48-49.  The Prime Partners Complaint further alleged that as a result of HCMG's attorneys sending these cease and desist letters, making the false representation that Prime Partners was bound by a Provider Services Agreement, the prospective IPAs either discontinued negotiations with or imposed more onerous terms on Prime Partners.  Id. ¶ 50, 52, 54.

## 2.    The Odubela FAC

On December 12, 2011, a First Amended Complaint ("FAC") was filed in another lawsuit pending before the Riverside County Superior Court entitled Odubela, MD., Inc., et al. v. Anita Jackson, MD., et al.  Dkt. 12-9 (the "Odubela FAC" or "Odubela Action"),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                  **'O'**
**AMENDED**

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

Caption Page.  The Odubela Action was brought by Prime Partners and by Abayomi Odubela, M.D., Inc.  Id.

The Odubela FAC named as defendants KM, Dr. Chaudhuri, Michael Foutz and Mary Dempsey, among others.  Id.  The complaint alleged that Dr. Chaudhuri and Mr. Foutz were at all relevant times "officers, directors and/or controlling managers of KM," and that Mary Dempsey was a KM employee.  Id. ¶¶ 18, 37.  The Odubela FAC alleged that "each Defendant was the agent . . . of each of the other Defendants," and that "[e]ach Defendant ratified, authorized, assisted and/ or consented to the wrongful acts of each of the Defendants."  Id. ¶¶ 13, 16.

The Odubela Action concerned the alleged improper solicitation of a Prime Partners physician named Anita Jackson, M.D.  Id.  ¶¶ 23-25, 69.  The FAC alleged, *inter alia*, that in early November 2011, Dr. Jackson was contacted by two individuals, Michael Vargas and Donald Lee, who attempted to persuade her to leave Prime Partners and to initiate a relationship with another entity that was primarily controlled by KM, Dr. Chaudhuri and Mr. Foutz.  Id. ¶ 25, 69.  Although Dr. Vargas and Dr. Lee were not alleged to have been employees of KM, the complaint expressly alleged that they were at all times acting as "agents" of co-defendants KM, Dr. Chaudhuri and Mr. Foutz.  Id.  ¶¶ 13, 16, 70.

Specifically, the Odubela FAC alleged that Prime Partners had issued "cease and desist" letters to Dr. Vargas and Dr. Lee.  In one of these letters, dated November 10, 2011, a Prime Partners attorney alleged that Dr. Lee had been "repeatedly harassing" Dr. Jackson and two other physicians in an effort to convince them to leave Prime Partners in favor of another IPA owned by Dr. Chaudhuri.  Id., Ex. B (Letter from Russell D. Kinnier to Dr. Donald W. Lee, dated November 10, 2011, as attached to the Odubela FAC).  The letter accused Dr. Lee, who was expressly alleged to have been acting as KM's and the other defendants' "agent," of making false and defamatory statements about Prime Partners:

> You have made *false representations*, and frankly, *defamatory remarks* concerning [Prime Partners] and its shareholders, as well as outright *false statements* regarding [Prime Partners']

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL<br>AMENDED | | | 'O' |
|---|---|---|---|---|
| Case No. | EDCV15-1869-CAS(KKx) | | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | | |

transition from Hemet Community Medical Group and its potential impact on [Prime Partners'] providers' practices.

<u>Id.</u> (emphasis added).

### C.    Plaintiffs' Tender and Defendant's Denial of the Duty to Defend

On November 7, 2011, KM and HCMG tendered the <u>Prime Partners</u> Complaint to American Casualty for a defense.  PS ¶ 37 (citing Dkt. 12-10 ("Letter from Dominic Nesbitt to American Casualty, dated November 7, 2011)); DS ¶ 37.  Tender was made on behalf of KM and HCMG, as well as Dr. Chaudhuri, Mr. Foutz and Mr. Thomas.  <u>Id.</u>  On December 5, 2011, American Casualty responded to the tender by denying that it owed a duty to defend the <u>Prime Partners</u> Action.  PS ¶ 38 (citing Dkt. 12-10 ("Letter from Pamela Ellingson to Dominic Nesbitt, dated December 5, 2011")); DS ¶ 38.

On January 8, 2013, KM tendered the <u>Odubela </u>FAC to American Casualty for a defense on behalf of KM, Dr. Chaudhuri, Mr. Foutz, and Ms. Dempsey.  PS ¶ 53; DS ¶ 53.  Two weeks later, on January 24, 2013, American Casualty responded and denied that it owed a duty to defend the <u>Odubela</u> Action.  PS ¶ 54; DS ¶ 54.

KM and HCMG state that "[a]s a result of American Casualty's denials," they incurred fees and expenses in their own defense, as well as in the defense of Dr. Chaudhuri, Mr. Foutz, Mr. Thomas and Ms. Dempsey.  PS ¶ 55.

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL AMENDED | | | 'O' |
|---|---|---|---|---|
| Case No. | EDCV15-1869-CAS(KKx) | | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | | |

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

American Casualty maintains that it had no duty to defend plaintiffs because (1) the underlying actions on their face do not allege any "personal and advertising injury" of the kind covered by the subject Policy, and (2) that even if the underlying actions did sufficiently allege "personal and advertising injury," certain exclusions negate any potential for coverage. Opp'n at 9. For reasons explained below, the Court disagrees, and grants plaintiffs motion for partial summary judgment as to American Casualty's duty to defend.

### A.   Legal Standard Regarding the Duty to Defend under California Law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**
**AMENDED**

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

In California, an insurer's duty to defend its insured is broad. <u>Pension Trust Fund for Operating Engineers v. Federal Ins. Co.</u>, 307 F.3d 944, 949 (9th Cir. 2002). An insured is entitled to a defense "if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy." <u>Montrose Chemical Corp. v. Superior Court</u>, 6 Cal. 4th 287, 299 (1993) (emphasis in original). "The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded." <u>Scottsdale Ins. Co. v. MV Transp.</u>, 36 Cal. 4th 643, 654 (2005). Whether there is a duty to defend turns upon "those facts known by the insurer at the *inception* of a third party lawsuit." <u>Montrose</u>, 6 Cal. 4th at 295 (emphasis added). Thus, "[d]etermination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy." <u>Scottsdale Ins. Co.</u>, 36 Cal. 4th at 654.

"[T]he duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered." <u>Id.</u>; <u>see also</u> <u>Waller v. Truck Ins. Exch., Inc.</u>, 11 Cal. 4th 1, 19 (1995) (explaining that the duty to defend exists if the insurer "becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement."). "When determining whether a particular policy provides a potential for coverage and a duty to defend, [courts] are guided by the principle that interpretation of an insurance policy is a question of law." <u>Waller</u>, 11 Cal. 4th at 18. "Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." <u>Scottsdale Ins. Co.</u>, 36 Cal. 4th at 654.

Crucially for purposes of the instant motion for partial summary judgment regarding the duty to defend, defense of the insureds is excused only when "the third party complaint can *by no conceivable theory* raise *a single issue* which could bring it within the policy coverage." <u>Montrose</u>, 6 Cal. 4th at 300 (emphasis added). Accordingly, an insurer who receives tender indicating potential for coverage "cannot 'wait out' discovery before determining its duty to defend; that is precisely why the California Supreme Court requires defense even on the basis of potential coverage." <u>Tower Ins. Co. of New York v. Capurro Enterprises Inc.</u>, No. C 11-03806 SI, 2011 WL 6294485, at *7 (N.D. Cal. Dec. 15, 2011) (citing <u>Montrose</u>, 6 Cal. 4th at 299)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL AMENDED | | 'O' | |
|---|---|---|---|
| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

**B.    The Underlying Complaints Established the Potential for Coverage under the Policies and therefore Triggered American Casualty's Duty to Defend Both Suits**

In its opposition, American Casualty offers two main arguments in support of its contention that plaintiffs' tender failed to trigger the duty to defend under the policies. Specifically, defendant argues that "(1) the complaints do not *specifically allege* libel, slander or disparagement; and (2) even if they did, the complaints fail to allege a 'publication' by or on behalf of the named insured." Opp'n at 10 (emphasis added). As an initial matter, plaintiffs note in their reply that they are "not contending [that] the allegations in either underlying action potentially triggered coverage for trade libel or product disparagement." Reply at 3. Rather, plaintiffs state that they "have contended all along . . . that they faced potential liability for defamation (i.e., slander or libel)" only, and not disparagement (i.e., trade libel). Id. Accordingly, in the discussion that follows, the Court focuses its inquiry on whether the duty was triggered by allegations of defamation—i.e., alleged publication of "[o]ral or written . . . material that slanders or libels a person or organization"—rather than allegations of disparagement or trade libel. Dkt. 12-6 (Policy #1), at p. 41; Dkt. 12-7 (Policy # 2) at p. 102.

**1.    The Underlying Complaints Need Not Specifically Allege Libel or Slander to Trigger the Duty to Defend under the Policies**

First, American Casualty argues that when "the underlying complaint does not specifically allege a covered cause of action [e.g., slander or libel], a duty to defend will be found only if *all essential elements of the covered claim are alleged in the complaint*." Opp'n at 8 (emphasis added). According to defendant, "[a] long line of cases involving the specific clause at issue in this case recognizes this basic principle, tying coverage to the elements of the underlying torts." Id.

Contrary to defendant's contention, however, California law plainly does not establish that "a duty to defend will be found only if all essential elements of the covered claim are alleged in the [tendered] complaint." Id. Defendant's assertion is premised upon a misstatement of the law—namely, that plaintiffs were obligated in their tender

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                    'O'
AMENDED

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

definitively to prove coverage under the policies rather than merely prove *potential* for such coverage in order to trigger the duty to defend.  Again, "[t]o prevail [with respect to the initial duty to defend inquiry], the insured must prove the existence of a potential for coverage, while *the insurer must establish the absence of any such potential*."  Montrose, 6 Cal. 4th at 300.  In other words, as the California Supreme Court explained further in Montrose,

> [While the] insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove *it cannot*.  Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.

Id. (emphasis added).

While this standard places a heavy burden on insurers attempting to disprove the existence of a potential for coverage, "[a]ny seeming disparity in the respective burdens [between the insurer and the insured] merely reflects the substantive law."  Id. Accordingly, as plaintiffs note in their moving papers, numerous California cases to have considered the duty to defend under "personal and advertising injury" provisions similar to those at issue here have held that the duty may be triggered even where, as in the instant case, (1) the tendered complaint does not plead formal causes of action for "slander" or "libel," and (2) the complaint arguably does not allege each and every element of a slander or libel claim.  Motion at 8-11.

For example, in Barnett v. Fireman's Fund Ins. Co., the California Court of Appeal found a duty to defend under an insurance policy that included "personal and advertising injury" provisions substantially similar to the one at issue here.  90 Cal. App. 4th 500, 509 (noting policy provided coverage for injury arising out of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services").  As in the instant case, the underlying complaint in Barnett did not include a claim for defamation; rather, the complaint included only claims for breach of fiduciary duty, intentional interference with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                    'O'
AMENDED

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

contractual relations, breach of the implied covenant of good faith and fair dealing, and fraud. Id. at 506. The defendant-insurer argued, as does American Casualty here, that it had no obligation to defend unless the underlying complaint "allege[d] *all of the elements* necessary to establish an enumerated offense"—thus, because the "underlying action did not allege all of the elements necessary to state a cause of action for defamation," the defendant-insurer contended its duty to defend the underlying action never arose. Id. at 510 (emphasis added).

The court expressly rejected this argument, noting that "the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party." Id. (citing CNA Casualty of California v. Seaboard Surety Co., 176 Cal.App.3d 598, 606-607 (1986)). The court explained that the complaints in the underlying action—much like the underlying complaints in the instant case—alleged that the insured parties had "told third persons that [a physician practice management company's] methods of doing business were flawed and would result in its failure and made other representations that disparaged and damaged [the company]." Id. Such allegations, according to the court, were sufficient to "trigger at least a potential for coverage under the personal injury coverage for defamation" provided by the policy. Id. What's more, as the Ninth Circuit noted in a discussion of Barnett, the pertinent allegations "were *buried within the complaint* to show the moral blameworthiness of the defendants, yet they were enough to trigger the duty to defend." Pension Trust Fund for Operating Engineers, 307 F.3d at 952 (emphasis added).

Similarly, the California Court of Appeal in CNA Cas. of California v. Seaboard Sur. Co. held that insurance policy provisions covering claims for libel, slander, or other defamatory or disparaging material "potentially covered" allegations that the insured had "misrepresented 'the business, property and rights possessed by [plaintiffs] to persons with whom plaintiffs did business in an effort to disrupt and prevent' the business relationships between those persons and the plaintiffs." 176 Cal. App. 3d 598, 608 (1986) (quoting the tendered complaint); see also Pension Trust Fund for Operating Engineers, 307 F.3d at 951 (noting that "[a]lthough the [tendered] complaint [in CNA] included the[] allegations to support an antitrust claim, the allegations nevertheless prompted a duty to defend against piracy, libel, slander, etc."). Plaintiffs in the instant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
| :--- | :---: | :--- | :---: |
| | AMENDED | | |
| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

action also note that a similar conclusion was reached by a federal district court applying California law in <u>Dobrin v. Allstate Ins. Co.</u>, 897 F.Supp. 442 (C.D. Cal. 1995). In <u>Dobrin</u>, the insured, an attorney, was sued in a cross-complaint by his former partner following dissolution of their law firm. <u>Id.</u> The complaint alleged that the insured-attorney breached his fiduciary duties by "actively soliciting" clients of the dissolved firm and by "misrepresenting the nature and circumstance of the dissolution" to those clients. <u>Id.</u> at 443. The insurer denied a duty to defend the cross-complaint on the grounds that it did not allege a claim of personal injury, as defined by the policy.[1] In a motion for summary judgment on the duty to defend, the insured argued that although the underlying complaint did not state "libel," "slander," or "publication of material damaging to one's reputation" as causes of action, the "factual allegations demonstrate[d] that the breach of fiduciary duty claim [was] premised on the claim that [the insured-attorney] misrepresented the nature of the dissolution in order to divert clients away from [his former partner], thus causing [the former partner] damage to his business reputation," such that "a *potential* claim for personal injury as defined under the policy exists." <u>Id.</u> at 444 (emphasis added). The court agreed, holding that the allegations in the cross-complaint triggered the insurer's duty to defend, despite not expressly asserting a claim of personal injury as defined under the policy. <u>Id.</u> at 445.

## 2. The Underlying Complaints Specifically Alleged Publication of Defamatory Material and Thereby Triggered the Duty to Defend under the Policies

Collectively, as the Ninth Circuit noted in <u>Pension Trust Fund for Operating Engineers</u>, the three cases discussed *supra* illustrate "the loose nexus required for duty-to-defend determinations" and demonstrate the principle that "[when] there is any potential that a claim includes allegations of covered conduct, the insured's defense duty arises." 307 F.3d at 952. In light of this standard, the Court concludes that both of the

---

[1] The relevant insurance provision in the policy provided that the insurer would defend the insured in certain "personal injury" suits, with "personal injury" defined to include, *inter alia*, acts committed in the course of the insured's business that give rise to a claim for "[l]ibel, slander or the publication of any material damaging to anyone's reputation." <u>Dobrin</u>, 897 F.Supp. at 443.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                                 'O'
AMENDED

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|----------|----------------------|------|-------------------|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

underlying complaints at issue here created the potential for coverage under the American Casualty policies because each complaint included allegations of "[1] [o]ral or written publication . . . of material [2] that slanders or libels a[n] . . . organization" and that "[3] ar[ose] out of [the insured's] business." Dkt. 12-6 (Policy #1), at p. 28; Dkt. 12-7 (Policy # 2) at p. 88.

Under California law, a defamation claim, which may be asserted as a claim for slander (oral) or libel (written), includes the following elements: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." Wong v. Tai Jing, 189 Cal. App. 4th 1354, 1369 (2010); see also Brown v. Kelly Broad. Co., 48 Cal. 3d 711, 723 (1989). Both slander and libel are specifically defined under the California Civil Code to require a "false and unprivileged publication," either "orally," Cal. Civ. Code § 46 (slander), or "by writing," id. § 45 (libel). To be considered "published," the false statement must be made to at least one person other than the defamed. Cabesuela v. Browning-Ferris Indus. of California, Inc., 68 Cal. App. 4th 101, 112 (1998). The statement also must specifically refer to or concern the defamed plaintiff in some way. Blatty v. New York Times Co., 42 Cal.3d 1033, 1042 (1986).

Here, the Prime Partners Complaint included allegations that insured parties "HCMG and KM ha[d] seized on their financial manipulation of Prime Partners by publishing" a "falsity" to "the provider community"—namely, the alleged false assertion "that Prime Partners is in financial distress," which HCMG and KM allegedly used "as a tool to recruit Prime Partners' physicians to contract directly with HCMG" and thereby directly harm Prime Partners. Prime Partners Complaint ¶ 61. (emphasis added). Accordingly, as plaintiffs here contend, this allegation exposed KM and HCMG, as well as Dr. Chaudhuri, Mr. Foutz and Mr. Thomas (based upon the allegation that "[e]ach Defendant ratified, authorized, assisted and/or consented to the wrongful acts of each of the Defendants"), to potential liability for defamation covered by American Casualty's policies, even though the underlying complaint itself did not assert a defamation claim. Id. ¶ 9. See 5 Witkin, Summary of California Law 10th Ed. (2005) Torts, § 532, p. 784 ("A corporation may be defamed by matter that has a tendency to injure its business reputation, as by deterring persons from dealing with it.") (italics in original);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL AMENDED | | | 'O' |
|---|---|---|---|---|
| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 | |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | | |

Barnes-Hind, Inc. v. Superior Court, 181 Cal.App.3d 377, 381 (1986) ("A corporation can be libeled by statements which injure its business reputation.").

Thus, based solely upon a review of the allegations regarding the insureds' "publishing" to the "provider community" of a "falsity" regarding Prime Partners' "financial distress," there certainly was a potential for coverage under the policies' relevant provisions. See Dkt. 12-6 (Policy #1), at p. 41; Dkt. 12-7 (Policy # 2) at p. 102 (defining "personal and advertising injury" to include injury arising from an "[o]ral or written publication, in any manner, *of material that slanders or libels a person or organization*") (emphasis added). American Casualty's arguments to the contrary are unavailing.

Specifically, American Casualty argues that allegations in the Prime Partners Complaint "do not fall within the policy's insuring agreement" because the complaint fails to allege precisely how the alleged statement "that Prime Partners is in financial distress" was "published," as well as "when [the defamatory] statement was allegedly made and/or whether it was during the . . . effective policy period." Opp'n at 15. These arguments miss the mark, however, because they place upon plaintiffs an impermissibly heavy burden that is unsupported by the relevant caselaw. Plaintiffs need not submit in their initial tender evidence *conclusively establishing* that allegedly defamatory statements occurred during the policy period in order to trigger American Casualty's duty to defend. Rather, when a suit alleges facts that create even the "bare 'potential'" or "possibility" that the insured may be subject to liability for damages covered under the insurance policy, an insurer like American Casualty must defend unless and until it can point to "undisputed facts" demonstrating that the claim is not covered. Montrose, 6 Cal. 4th at 299-300. In fact, the insured, in submitting tender for a defense, need not demonstrate that coverage is likely or even "reasonably" likely. J. Croskey, et al. Cal. Prac. Guide: Ins. Lit. at ¶ 7:525 (Rutter 2014) (citing Montrose, 6 Cal. 4th at 299-300 (rejecting "reasonable potential for coverage" standard)). Thus, even where, as here, the allegations in the underlying complaint are primarily focused on non-covered claims, the Court "look[s] not to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential for liability under the policy." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th at 1084 (rejecting insurer's argument that certain alleged misconduct "could not possibly give rise to liability" because other non-covered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|---|
| | AMENDED | | | |
| Case No. | EDCV15-1869-CAS(KKx) | | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | | |

misconduct was the "dominant factor" in the case); <u>see also</u> <u>Pension Trust Fund for Operating Engineers</u>, 307 F.3d at 951 ("The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim. Instead, California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty.") (citation omitted).

The same can be said of the <u>Odubela</u> FAC, which alleged that two doctors— acting as "agents" of KM, Chaudhuri, and Foutz—represented to a Prime Partners physician that Prime Partners "was going to be bankrupted as a result of a recently-filed lawsuit " and "was on the verge of losing its patients since they would be transferred away" due to the pending lawsuit. <u>Odubela</u> FAC ¶¶ 25, 70; <u>see also</u> <u>id.</u> ¶¶ 13, 16 (alleging that "each Defendant was the agent . . . of each of the other Defendants," and that "[e]ach Defendant ratified, authorized, assisted and/ or consented to the wrongful acts of each of the Defendants."). Any doubt as to whether the plaintiffs in the <u>Odubela</u> Action considered these statements to be false or defamatory in nature was addressed by the two cease and desist letters referenced in the body of the FAC and attached in full as exhibits to the pleadings. In particular, one of these letters accused Dr. Lee, who again was alleged to have been acting as KM's "agent," of making "*false representations, and frankly, defamatory remarks* concerning [Prime Partners] and its shareholders, as well as outright *false statements* regarding [Prime Partners'] transition from [HCMG] and its potential impact on [Prime Partners'] providers' practices." <u>Odubela</u> FAC, Ex. B (Letter from Russell D. Kinnier to Dr. Donald W. Lee, dated November 10, 2011, as attached to the <u>Odubela</u> FAC). As plaintiffs note, it is immaterial that the clarification regarding the allegedly "false" and "defamatory" nature of Dr. Lee's remarks appeared within the complaint's exhibits. <u>See</u> Witkin, California Procedure 5th Ed. (2008) Plead, § 428, p. 562. ("[T]here can be no difference between setting forth such instrument in the body of the pleading and in annexing it as an exhibit and making it a part of the pleading by a proper reference. In each case the copy is part of the pleading.") (citation omitted); Fed. Rule Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); <u>Montrose</u>, 6 Cal.4th at 300 ("The duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                                'O'
AMENDED

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

Also unpersuasive is American Casualty's contention that "[t]o trigger a policy's 'personal and advertising injury' coverage, the complaint must allege a defamatory statement *made by the insured*." Opp'n at 16 (emphasis in original) (citing Total Call Int'l, Inc. v. Peerless Ins. Co., 181 Cal.App.4th 161, 169 (2010)).[2] The Policy itself states that American Casualty will "defend the insured against any 'suit'. . . [seeking damages for] 'personal and advertising injury' caused by an offense *arising out of [the insured's] business*." Dkt. 12-6 (Policy #1), at p. 28 (emphasis added); Dkt. 12-7 (Policy # 2) at p. 88 (emphasis added). As plaintiffs argue, this limitation is not akin to requiring that "the insured must commit the act itself or that coverage is precluded where a non-insured 'agent' of the insured commits an act rendering the insured liable." Reply at 6-7. There is simply no requirement in the policies that the insured's liability arise not only out of the insured's "business," but also out of its direct actions or the actions of another insured (as opposed to merely the actions of an individual alleged to have been acting as the insured's "agent" and on behalf of the insured's business). Furthermore, to the extent to which there is "[a]ny doubt as to whether the facts [alleged in the complaint] give rise to a duty to defend," such doubt must be "resolved in the insured's favor." Horace Mann Ins. Co., 4 Cal.4th at 1081. Finally, although American Casualty contends that, despite the allegations in the complaint, in actuality Dr. Lee and Dr. Vargas were not really "agents" of the insureds, DS ¶ 30, defendant (1) fails to cite to any evidence that supports this contention, and (2) further fails to recognize that "the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts *known by the insurer at the inception of a third party lawsuit*. [Citation.] Hence, the duty 'may exist even where coverage is in doubt and ultimately does not develop.' [Citation.]" Montrose, 6 Cal. 4th at 295 (emphasis added) (citing Saylin v. California Ins. Guarantee Assn. 179 Cal.App.3d 256, 263 (1986)). In other words, even if Dr. Lee and Dr. Vargas were *not* really acting as agents of insured-party KM at any time, it appears that American Casualty did not know as much at the inception of the third party lawsuit, and therefore cannot rely upon any such assertion now in avoiding its duty to defend the suit.

---

[2] To the extent to which defendant argues that the California Court of Appeal's decision in Total Call holds that the complaint must allege a defamatory statement by the insured, this is simply not the case. See Total Call, 181 Cal.App.4th at 169.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL AMENDED | | | 'O' |
|---|---|---|---|
| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

Thus, upon receiving plaintiffs' tender in both the Prime Partners and Odubela actions, American Casualty was put on notice of potential injury covered by the policies and was obligated to provide an immediate defense at that time, rather than leaving plaintiffs to finance their own litigation defense.  Indeed, insured parties, like plaintiffs KM and HCMG, "obtain[] liability insurance in substantial part in order to be protected against the trauma and financial hardship of litigation.  If the courts did not impose an immediate defense obligation upon a showing of a 'potential for coverage,' thereby relieving the insured from the burden of financing his own defense and then having to sue the insurer for reimbursement, the premiums paid by the insured would purchase nothing more than a lawsuit."  Haskel, Inc. v. Superior Court, 33 Cal. App. 4th 963, 979 n.14, as modified (Apr. 25, 1995) (citation omitted).  In wrongfully denying its duty to defend the underlying suits, American Casualty therefore breached its duty to defend plaintiffs in accordance with the insurer's obligations under the policies.

### C.    The Policies' Exclusions Did Not Excuse American Casualty's Denial of its Duty to Defend

Defendant argues that even if plaintiffs establish a potential for coverage under the policies' insuring agreement—which, as the Court explained *supra*, plaintiffs have successfully done—the following exclusions apply to preclude coverage for the underlying actions: first, the "knowing violation" and "knowledge of falsity" exclusions; second, the "breach of contract" exclusion; and third, the "criminal act" exclusion.  For reasons explained below, the Court disagrees, and finds that the policy exclusions did not warrant American Casualty's improper denial of its duty to defend the underlying suits, and therefore do not justify a denial of plaintiffs' motion for partial summary judgment.

### 1.    "Knowing Violation" and "Knowledge of Falsity" Exclusions

The policies expressly exclude coverage for injury (1) caused "with the knowledge that the act . . . would inflict" injury or (2) arising out of defamatory statements made "with knowledge of its falsity."  Dkt. 12-6 (Policy #1), at p. 34; Dkt. 12-7 (Policy # 2) at p. 94.  Defendant argues that the underlying complaints "allege that the insured engaged in knowingly false and intentional conduct in an effort to prevent Prime Partners from contracting with other IPAs," and that "[i]n light of these allegations, any alleged disparagement is barred from coverage by the knowing violation or knowledge of falsity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL AMENDED | | | 'O' |
|---|---|---|---|
| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

exclusions."  Opp'n at 19-20.  This argument fails, however, because—as plaintiffs rightly note—"[a]n insurer does not meet its burden of establishing an exclusion's application by pointing to unproven and disputed allegations in the very complaint it is called upon to defend."  Reply at 1.  Indeed, as Justice H. Walter Croskey of the California Court of Appeal has explained,

> An insurer may rely on an exclusion to deny coverage *only if it provides conclusive evidence demonstrating that the exclusion applies*. [Citations.] Thus, an insurer that wishes to rely on an exclusion has the burden of proving, *through conclusive evidence*, that the exclusion applies in all possible worlds.

Atl. Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017, 1038-39 (2002) (Croskey, J.) (emphasis added) (explaining that an "equivocal and self-serving declaration of [the insurer's] own claims adjuster certainly did not rise to the level of conclusive evidence" establishing the applicability of an exclusion).  Thus, "[e]ven though it may ultimately [have] be[en] determined that [American Casualty] has a viable defense to coverage by virtue of the application of the . . . exclusion, this can only affect its liability for *indemnification*," not its duty to defend in the first instance, since its "duty to defend depended on the existence of only a *potential* for coverage."  Id. at 1040 (emphasis added).  That potential cannot be "conclusively negated" by pointing to disputed allegations in the very complaint that plaintiffs are seeking to defend against.  Id.; see also Gray, 65 Cal. 2d at 277 (finding that an intentional act exclusion did not negate the duty to defend because the insured "might have been able to show . . . he did not commit wilful and intended injury, but [instead] engaged only in nonintentional tortious conduct" despite the underlying complaint's "*pleading* of intentional and wilful conduct") (emphasis added).  Indeed, "courts usually find a duty to defend despite the knowing falsehoods exclusion," as "[t]here is usually at least a possibility of coverage because, despite the allegations of intentional acts, the insured's conduct may be shown to have been merely reckless or negligent."  J. Croskey, et al., Cal. Prac. Guide: Ins. Lit. at ¶ 7:1066.2 (Rutter 2014).  This was precisely the case here; accordingly, neither the "knowing violation" nor the "knowledge of falsehood" exclusions excused American Casualty's denial of its duty to defend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                      'O'
AMENDED

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

### 2.     "Breach of Contract" Exclusion

The policies exclude coverage of claims for injury "[a]rising out of breach of a contract."  Dkt. 12-6 (Policy #1), at p. 34; Dkt. 12-7 (Policy # 2) at p. 94.  Defendant argues that "[i]t cannot be disputed that the claims in both underlying actions flow or originate from the contract between HCMG and Prime Partners, and specifically a Group Provider Service Agreement [that] HCMG entered into with Prime Partners on July 1, 2004."  Opp'n at 21.  As plaintiffs note, however, the exclusion is a "*breach* of contract" exclusion, not a "contract" exclusion, and accordingly does not per se exclude from coverage all claims arising out of any contractual relationship.  Reply at 11; see HS Servs. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 645 (9th Cir. 1997) (explaining that exclusionary clauses are "strictly construed" and that the insurer "bears the burden of bringing itself within a policy's exclusionary clauses.").  Importantly, the exclusion could have been written more broadly so as to cover all claims for injury arising out of any "alleged" breach of contract.  See, e.g., Church Mutual Ins. Co. v. U.S. Liability Ins. Co., 347 F.Supp. 2d 880, 884 (S.D. Cal. 2004) (noting that liability policy excluded coverage for any claim "arising out of, directly or indirectly resulting from or in consequence of, or in any way involving . . . any actual *or alleged* breach of contract.") (emphasis added).  Here, however, the relevant exclusion was not written so broadly, and therefore to avoid its duty to defend, American Casualty must point to "conclusive evidence" establishing that any potential liability that the insured faced for allegedly defaming Prime Partners necessarily arose out of an *actual* breach—not an alleged breach—of the aforementioned Provider Services Agreement or some other contract.  See Atl. Mut. Ins. Co.,100 Cal. App. 4th at 1038-39.

Plainly, defendant has failed to do so.  Although the allegations in the Prime Partners Complaint *allege* a breach of contract, KM and HCMG, as the insured-defendants in that action, "vehemently denied" the allegations regarding any breach.[3]

---

[3] The only insured party to the Provider Services Agreement was HCMG, which was not named as a defendant in the Odubela Action.  In any event, the Odubela Action does not include a cause of action for breach of contract; furthermore, to the extent to which the allegations of defamation are premised upon a breach of contract, any such breach was a disputed issue within the action itself, and therefore cannot be relied upon to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' | |
|---|---|---|---|---|
| | AMENDED | | | |

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

Reply at 12.  As plaintiffs rightly note, because this was a disputed issue in the Prime Partners action itself, any alleged breach of contract could not eliminate American Casualty's duty to defend.  Id.; see Amato v. Mercury Cas. Co., 18 Cal. App. 4th 1784, 1790 (1993) ("[T]he existence of a disputed fact determinative of coverage *establishes* the duty to defend.") (citing Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076 (1993)) (emphasis in original).  Defendant's citation to the Ninth Circuit's unpublished decision in Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am. is also unavailing.  In Nestle USA, the court held that "[b]ecause [the insured's] claims all *arise out of the factual situation that constituted a breach of contract*, they are excluded from coverage."  10 F. App'x 438, 440 (9th Cir. 2001).  Here, in contrast to Nestle USA, the defamation allegations concerned the publication to third parties of false statements about Prime Partners that could have been raised independent of any prior contractual relationship or any alleged breach of contract, and therefore are not properly excluded as "arising out of" the breach of contract allegations.  See Allan D. Windt, Insurance Claims and Disputes § 11:7 A n.2, at pp. 11-174 to 11-175 (6th ed. 2013) ("If . . . the insureds are also being sued on the basis that they would be liable even apart from the promises made in the contracts between the parties, the exclusion would not apply to those claims."); c.f. Medill v. Westport Ins. Corp., 143 Cal.App.4th 819, 831 (2006) (contract exclusion barred coverage for negligence and breach of fiduciary claims against insured directors arising out of duties owed under a contract since "the tort claims against the directors and officers are not independent of the breach of contract claims").

### 3.    "Criminal Act" Exclusion

The policies do not cover claims for injury "[a]rising out of a criminal act committed by or at the direction of any insured."  Dkt. 12-6 (Policy #1), at p. 34; Dkt. 12-7 (Policy # 2) at p. 94.  Defendant argues that this exclusion would preclude coverage for at least the allegations in the Prime Partners Complaint regarding disparaging comments made by the insureds in cease and desist letters that contained "false" information and were allegedly sent "with the intent to defraud Prime Partners as well as each intended recipient."  Opp'n at 24 (citing Prime Partners Complaint ¶ 55).  According to defendant,

bring the underlying complaint within the policies' breach of contract exclusion.  Reply at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**　　　　　　'O'
**AMENDED**

| Case No. | EDCV15-1869-CAS(KKx) | Date | December 21, 2015 |
|---|---|---|---|
| Title | KM STRATEGIC MANAGEMENT, LLC ET AL. V. AMERICAN CASUALTY COMPANY OF READING, PA | | |

the <u>Prime Partners</u> Complaint alleges that the insureds engaged in mail fraud by sending these letters, which also form the basis for the RICO count against the insureds, such that "even if these letters and their content potentially trigger the Policy's 'personal and advertising injury,' (which they don't) . . . [any] coverage is barred by the 'criminal acts' exclusion." Opp'n at 25.

As with defendant's other contentions regarding the policies' exclusions, defendant's argument regarding "criminal acts" does not inform a different result with respect to the instant motion on the duty to defend. As plaintiffs note, "American Casualty has no conclusive evidence that the insured defendants actually engaged in mail fraud or violated RICO beyond the unproven allegations made in the Prime Partners Complaint," and therefore the proper question in deciding on the duty to defend was "whether it was possible [that] the insured defendants might be found liable for defaming Prime Partners by sending the cease and desist letters without having necessarily also committed a criminal act." Reply 16. Because it was, in fact, entirely possible that the insureds could be found liable for defamation (assuming a claim was later asserted) without also being liable on the RICO claim, American Casualty could not simply deny its duty to defend based upon the allegations of criminal conduct in the very underlying complaint that the insureds were seeking to defend against.

## V. CONCLUSION

In accordance with the foregoing, the Court finds that defendant American Casualty breached its duty to defend its insureds, plaintiffs KM and HCMG, against the <u>Prime Partners</u> action, as well as plaintiff KM against the <u>Odubela</u> action. Accordingly, plaintiffs' motion for partial summary judgment as to the duty to defend is hereby **GRANTED**.

IT IS SO ORDERED.

|  | 00 | : | 05 |
|---|---|---|---|
| Initials of Preparer | | CL | |